NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORENZO ALVAREZ, | |
| Petitioner, | Civil Action No. 16-4548 (JMV) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondents. | |

**VAZQUEZ, U.S. District Judge**

Petitioner, acting *pro se*, filed this petition for writ of habeas corpus under 28 U.S.C. § 2255 seeking to vacate, correct, or set aside his sentence. D.E. 1. The Court has reviewed Petitioner's brief (D.E. 3), the Government's opposition brief (D.E. 11), Petitioner's reply brief (D.E. 14), and the documents submitted by the parties in support of their positions. For the reasons that follow, the Court denies Petitioner's request for relief except that the Court will hold a hearing limited to the issue of the advice that Petitioner's counsel gave him before he pled guilty. More specifically, the hearing will solely address whether Petitioner's counsel advised him that despite his guilty plea, Petitioner would nevertheless be able to appeal the denial of his motion to suppress.

I. **BACKGROUND**

On November 21, 2008, United States Immigration and Customs Enforcement ("ICE") agents from Yuma, Arizona alerted ICE agents in Newark, New Jersey that Petitioner was planning to land his private airplane at Essex County Airport in Fairfield, New Jersey. The Yuma ICE

agents informed the Newark ICE agents that they believed Petitioner had large amounts of illegal drugs on the airplane. Motion to Suppress Opinion at 3-5.

Prior to notifying the Newark agents, petitioner was the subject of an ongoing investigation by the Yuma ICE agents that involved surveillance and information learned from confidential informants. *Id.* at 3-5. One of the confidential informants informed the Yuma ICE agents that Petitioner used his private airplane to transport illegal narcotics. The informant told the Yuma agents that Petitioner flew from Yuma, Arizona on or about November 19, 2008, after loading the airplane with illegal drugs. *Id.* at 5. The Yuma agents requested Air and Marine Operations Center ("AMOC") to track the plane and notify them of the flight plans. Through AMOC, the ICE agents learned that Petitioner was flying to Essex County Airport. *Id.* In addition to information about this specific flight, the Yuma ICE agents also informed the Newark ICE agents, among other things, that (1) their investigation into Petitioner had been ongoing for months, and (2) Petitioner had already been tracked in his plane and ICE confirmed the cities that he traveled to matched information from the informant. *Id.* at 7.

After receiving this information from the Yuma agents, Newark ICE agents went to the Essex County airport and observed Petitioner's plane land. After Petitioner parked the airplane, Petitioner and a female passenger exited the plane and entered the aviation building. The female passenger was later identified as Petitioner's girlfriend, Laura Elizabeth Ramirez Vasquez. *Id.* at 5-6. The Newark Agents then watched Petitioner drive a rented white Chevrolet Aveo to the airplane. The ICE agents observed Petitioner struggle to remove three heavy suitcases from the airplane and then load the bags into the trunk of the car. *Id.* at 6. The ICE agents believed that Petitioner had transferred drugs, located in the suitcases, from the airplane to his rental car. Petitioner then picked up Ramirez Vasquez and exited the airport. *Id.*

To preserve the integrity of the ongoing investigation, the ICE agents asked the Fairfield police for help. *Id.* at 6-7. The Fairfield Police Officers that assisted were informed that Petitioner may be in possession of large quantities of narcotics and that he was driving a white Chevrolet Aveo. *Id.* at 6. After Petitioner left the airport, Fairfield Officer Didyk initiated a traffic stop after observing a legitimate seatbelt violation. *Id.* at 7-8. The ICE agents, parked at a distance, observed the traffic stop and the resulting search of Petitioner's rental car. *Id.* at 7.

During the traffic stop, Officer Didyk asked Petitioner if he would consent to a search of the vehicle and presented him with a consent to search form. Petitioner agreed to the search and signed the form. Officer Didyk and an additional Fairfield police officer then searched the car. The Officers saw the three suitcases in the trunk, and Petitioner immediately stated that the suitcases did not belong to him and that they must have been left in the rental car before he obtained it. *Id.* at 11. Petitioner told Officer Didyk that he did not know who owned the suitcases. The officers pulled the suitcases from the trunk but could not open them because they were locked. *Id.* Petitioner and Ramirez Vasquez were eventually brought to the Fairfield police headquarters for further investigation. *Id.* at 12. The Fairfield Police and ICE agents opened the suitcases at the station and found 72 brick-shaped packages inside. It was later determined that the suitcases contained an approximate net weight of 52 kilograms of cocaine and 24 kilograms of heroin. Petitioner and Ramirez Vasquez were placed under arrest and read their *Miranda* rights after the suitcases were opened at the station. *Id.*

Petitioner had an initial appearance before Judge Shipp on or about November 24, 2008. At his initial appearance, Judge Shipp appointed Assistant Federal Public Defender Lisa Mack to represent Petitioner. Also at the initial hearing, and through counsel, Petitioner waived his right to a preliminary hearing. Crim. No. 09-319, D.E. 5. Mack and Petitioner had not met before the

3

initial appearance. Pet's Br. at 9. During the hearing, Mack instructed Petitioner to sign several different documents without providing an in-depth explanation as to the purpose of each form. Consequently, Petitioner was not aware that through these forms, he had waived his right to a preliminary hearing and had also signed a Speedy Trial Act waiver form. *Id.* at 9. According to Petitioner, Mack failed to advise him that he had the right to have the matter presented to a grand jury within thirty days of his incarceration or of his rights to a speedy trial. *Id.* at 11.

Petitioner also contends that after the initial appearance, he had trouble communicating with Mack and that he did not see her between December 2, 2008 until April 1, 2009. *Id.* at 9-10. During this time, Judge Shipp signed three orders for continuances under the Speedy Trial Act. The three continuances, which were signed by Mack and the Government, represented that plea negotiations were ongoing and the additional time was necessary for continued plea negotiations. D.E. 12, 14, 17. Petitioner was not aware of any of the three continuance orders and did not see any proposed plea agreements during this period. Pet's Br. at 11. Petitioner also contends that at an April 1, 2009 meeting with Mack, he requested that Mack file a petition for a preliminary hearing. According to Petitioner, Mack informed him that it was too late for a preliminary hearing because he had already been indicted by a grand jury. Pet's Br. at 10. The grand jury, however, did not return an indictment for Petitioner until April 22, 2009. D.E. 23.

On or about April 9, 2009, Petitioner raised concerns regarding Mack's continued representation. As a result, the Court appointed Christopher Adams as counsel for Petitioner pursuant to the Criminal Justice Act. D.E. 20. Adams represented Petitioner from the initial indictment until his guilty plea, which happened on January 25, 2010, the day that jury selection was scheduled to begin.

4

As mentioned, the grand jury returned a two-count indictment against Petitioner in April 2009 for distribution of, and possession with intent to distribute, heroin and cocaine. D.E. 23. On or about August 10, 2009, Petitioner was charged in a three-count superseding indictment. In addition to the original two counts, the superseding indictment also contained a count for conspiracy to distribute and possess with intent to distribute heroin and cocaine. D.E. 33.

In August 2009, Petitioner moved to suppress evidence that was seized as a result of the initial motor vehicle stop. D.E. 31. On September 9, 2009, Judge Debevoise held a hearing on Petitioner's suppression motion and through a written opinion issued on September 24, 2009, denied Petitioner's motion. D.E. 42. Judge Debevoise determined that the Fairfield Police had probable cause, independent of the motor vehicle stop, to search the car and the suitcases. *Id.* Judge Debevoise further found that Petitioner abandoned the suitcases when he denied ownership and, therefore, he had no expectation of privacy in the contents of the suitcases. *Id.* Petitioner proceeded to file a *pro se* interlocutory appeal of the motion to suppress decision without Adams' knowledge and despite an explanation from Adams that the decision could only be appealed at the conclusion of the case and upon entry of final judgment. D.E. 69, Motion to Withdraw at 2, D.E. 72. The appeal was filed with the Third Circuit on January 25, 2010, the same day that Petitioner pled guilty. *Id.*

Petitioner concedes that before his guilty plea on January 25, he had conversations with Adams regarding a potential plea agreement. According to Petitioner, Adams explained that if Petitioner could get a conditional plea, Petitioner could still appeal the motion to suppress decision. Pet's Br. at 13. Moreover, Petitioner contends that on January 25, Adams told him that he would not file any more motions on Petitioner's behalf and that going to trial "would be akin to suicide." *Id.* After this conversation on January 25 and before jury selection began, Petitioner pled guilty

to counts two and three of the Superseding Indictment and the Government agreed to dismiss count one, the conspiracy count. Pet's Br. at 13, Gov't Br. at 5. There was no written plea agreement. Despite his prior conversations with Adams, Petitioner's guilty plea was unconditional. Gov't Br. at 5. Petitioner, however, maintains that he pled guilty with the understanding that he still maintained his right to appeal the denial of his motion to suppress. Pet's Br. at 13.

Despite his guilty plea and Adams' explanation that the suppression issue could not be appealed until a final verdict, Petitioner continued to pursue his *pro se* interlocutory appeal. *See generally* Motion to Withdraw. Adams filed a motion to be relieved as counsel on April 30, 2010, due to Petitioner's unilateral actions without Adams' knowledge and an "irretrievable breakdown in communication between attorney and client." *Id.* Adams' motion was granted, and on or about September 21, 2010, Olubukola O. Adetula was appointed counsel pursuant to the Criminal Justice Act. D.E. 73, 81.

The parties appeared before Judge Debevoise for a status conference on May 3, 2011 to address various motions filed by Petitioner, many of which were filed *pro se*. Petitioner also filed a motion requesting that Adetula be relieved as counsel for providing ineffective assistance of counsel. This motion was denied, but Judge Debevoise allowed Petitioner to proceed *pro se* on certain matters. Judge Debevoise essentially reasoned that Petitioner was requesting his counsel to take action that, while not illegal, no reasonable defense attorney could be expected to follow so Petitioner could present those issues himself.

In addition, at the conference, Judge Debevoise addressed a few issues in anticipation of sentencing. One issue, which is relevant to this instant motion, involved inconsistent testimony from Ramirez Vasquez. Ramirez Vasquez, who testified before the grand jury and in a deposition, made inconsistent statements regarding her involvement in the crime. Judge Debevoise explained

that he was going to rely on Ramirez Vasquez's deposition testimony, concluding that she was credible during her deposition but not during the grand jury testimony. Status Conference Tr. at 10:1-21.

Petitioner was sentenced on September 19, 2011, to a term of 235 months for each count, to be served concurrently.[1] D.E. 101. Petitioner's total offense level was 38 and his criminal history category was one. This resulted in a Guideline prison range of 235 to 293 months. Sent. Tr. at 38:27-35. A number of issues were raised at Petitioner's sentencing, critical to the current petition is Judge Debevoise's finding that Petitioner was subject to a 2-level enhancement under Section 3B1.1(c) of the United States Sentencing Guidelines. That subsection provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [subsection] (a) or (b), increase by 2 levels." U.S.S.G. § 3B1.1(c). Judge Debevoise found that Petitioner was an organizer, leader, manager of Ramirez Vasquez. Sent. Tr. at 34:1-5. In so finding, Judge Debevoise reiterated his finding from the May 3, 2011 status conference that he was crediting Ramirez Vasquez's deposition testimony and not her statements to the grand jury. *Id.* at 34:21-25.

The two level enhancement pursuant to Section 3B1.1(c) also precluded Petitioner's eligibility for the safety valve provision. 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 2D1.1. Judge Debevoise, however, also found that Petitioner did not meet the requirements of the safety valve for a separate reason. Specifically, Petitioner had failed by the time of sentencing to provide the Government with all information and evidence that he had concerning the counts to which he pled

---

[1] Petitioner's sentence was later reduced from 235 months to 188 months pursuant to 18 U.S.C. § 3582(c)(2). D.E. 127.

guilty or offenses that were part of the same course of conduct or of a common plan or scheme. Sent. Tr. at 38:10-15.

Although there was a factual basis to support such findings, Judge Debevoise also decided not to apply several other relevant enhancements to Petitioner's sentence. The judge decided that Petitioner would still receive a two point reduction for acceptance of responsibility, and that the Court would not include a two level increase for obstruction of justice, even though after pleading guilty, Petitioner filed a motion claiming to have not actually signed the consent to search form. Sent. Tr. at 31-32:16-9; 36-38:25-2. A main factor militating against obstruction, according to Judge Debevoise, was that Petitioner waived his rights to challenge the constitutionality of the search by entering an unconditional plea of guilty. *Id.* at 37:17-15. Thus Petitioner's false claims concerning his signature on the consent form were immaterial in Judge Debevoise's view. *Id.* Judge Debevoise also decided not to consider information from law enforcement sources concerning other criminal acts by Petitioner. While recognizing that such information could support a finding of probable cause,[2] Judge Debevoise believed that it would be inequitable to use such information to increase Petitioner's Guideline's level absent live testimony. *Id.* at 32-33:5-19; 34-35:25-4. Finally, as discussed further below, Judge Debevoise decided not to apply the special skill enhancement although Petitioner unquestionably flew his own plane across the country in connection with the crimes to which he pled guilty.

Adetula did not appeal Judge Debevoise's application of a two-level enhancement under U.S.S.G. § 3B1.1, apparently despite Petitioner's request that he raise the issue on appeal. On September 19, 2011, however, Petitioner filed another *pro se* interlocutory appeal regarding the

---

[2] Judge Debevoise made this finding during the May 3, 2011 status conference. Status Conference Tr. at 8:9-22.

8

motion to suppress. D.E. 102. The Government filed a cross-motion for summary affirmance arguing that the appeal was foreclosed by Petitioner's unconditional guilty plea. The Third Circuit granted the cross-motion on October 17, 2014 and terminated the appeal. D.E. 121.

Petitioner filed this motion for habeas relief on July 19, 2016 pursuant to 28 U.S.C. § 2255. Petitioner argues that he was deprived of his right to effective counsel at various stages of the criminal proceedings and asks this Court to set aside or vacate his sentence and guilty plea. As will be addressed at length below, Petitioner contends that (1) Mack was ineffective because she failed to inform him of his rights regarding the Speedy Trial Act and his right to a preliminary hearing; (2) Adams was ineffective because he did not explain that in pleading guilty, Petitioner waived his right to appeal the suppression hearing decision; (3) Adetula was ineffective at sentencing because he failed to cite to persuasive legal authority regarding U.S.S.G. § 3B1.1, and (4) Adetula was also ineffective because he did not file an appeal as to the upward enhancement under U.S.S.G. § 3B1.1. The Government argues that Petitioner cannot establish that his counsel was deficient or that he was prejudiced at any stage of the proceeding.

## II. LEGAL STANDARD

### 1. Standard for a Section 2255 Motion

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). Moreover, "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief,"

9

a district court must hold an evidentiary hearing. *Id.* This is a "reasonably low threshold for habeas petitioners to meet." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

### 2. Ineffective Assistance of Counsel Standard

Petitioner challenges his sentence on the basis of ineffective assistance of counsel. The two-pronged test for demonstrating ineffectiveness, as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), is well-established. First, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The reasonableness of counsel's representation should be considered at the time of the challenged conduct and in light of the specific facts of the petitioner's case. *Id.* at 698. Moreover, scrutiny of an attorney's performance "must be highly deferential." *Id.* To that end, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Second, a petitioner must establish that he was prejudiced by his attorney's performance. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697). In addition, a court need not hold an evidentiary hearing if a petition contains no factual matter to support the prejudice prong. *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).

### III. ANALYSIS

### 1. Waiver of Speedy Trial Act Rights and Preliminary Hearing

Petitioner argues that Mack, his pre-indictment counsel, was ineffective because she caused him to waive his right to a preliminary hearing and filed three continuances without his consent. Petitioner contends that his uninformed waiver and Mack's decision to sign three continuances without his knowledge was detrimental in that it allowed the Government to obtain additional evidence to bolster its claims against him. Pet's Br. at 11. Petitioner further argues that a preliminary hearing would have "better equipped him to make a decision as to pleading earlier" and avoid "extraneous filings." *Id.* at 12. This, Petitioner argues, would have qualified him for an additional one-level downward adjustment for acceptance of responsibility at sentencing. *Id.*

First, Petitioner cannot establish that Mack's counsel was ineffective. Defense counsel is not required to obtain a client's consent before agreeing to an ends-of-justice continuance under the Speedy Trial Act. *See, e.g., United States v. Tulu*, 535 F. Supp. 2d 492, 500 (D.N.J. 2008) ("Nothing in the statute requires that the defendant consent to a continuance. Rather, a court can grant a continuance, over defendant's objection, upon the Government's motion, or on its own motion.") (citing 18 U.S.C. § 3161(h)(8)(A)). For a Speedy Trial Act continuance to be valid, a court must determine that "the ends of justice served [by the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). A judge must set forth its reasons, orally or in writing, for granting such a continuance. *Id.*

Here, Judge Shipp signed the three continuances due to representations that plea negotiations were ongoing. Crim. No. 09-319, D.E. 12, 14, 17. Plea negotiations are a valid reason to obtain a continuance under the Speedy Trial Act. *See United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994). Moreover, although Petitioner maintains that a plea agreement was never communicated with him, this does not mean that plea negotiations did not occur. *See, e.g., Tulu*,

11

535 F. Supp. 2d at 503 (rejecting argument that plea negotiations did not occur because defendant was not informed of the negotiations). In other words, Petitioner confuses plea negotiations with an actual plea offer. Petitioner claims that Mack never presented him with a plea offer from the Government, but the continuance do not indicate that an actual plea offer was made by the prosecution. In this instance, the reasons for each continuance were appropriately set forth on the record, conformed with the requirements of Section 3161(h)(7)(A), and entered into under Mack's professional judgment. Given that the Court's scrutiny of Mack is "highly deferential," the Court sees no basis upon which it could conclude that the decision to sign each continuance without Defendant's consent was ineffective.

As for Petitioner's contention that he unknowingly waived his right to a preliminary hearing, the Court finds that even assuming Mack's conduct was deficient, Petitioner suffered no prejudice. At a preliminary hearing, a magistrate judge determines whether there is probable cause to believe that a defendant committed the offense at issue. *See* Fed. R. Crim. P. 5.1. Thus, Petitioner must establish that if there was a preliminary hearing, Judge Shipp would have concluded that there was not probable cause to believe that Petitioner committed the offenses at issue. Again, Petitioner appears to confuse the issue, specifically, he conflates probable cause justifying a search with probable cause to support charges. At the preliminary hearing stage, the Government need only establish probable cause to sustain the charges.

The Government contends that if Petitioner had requested a preliminary hearing, the Government would have obtained an indictment before the hearing.[3] The Government may be correct, but the Court finds that the Government would have easily established probable cause at a preliminary hearing. Plaintiff was essentially caught red-handed with a large quantity of

---

[3] As noted, the grand jury did return an indictment against Peititioner. Crim. No. 09-319, D.E. 23.

narcotics. As set forth in the motion to suppress opinion, The New Jersey ICE agents watched Petitioner land his airplane and then load three heavy suitcases from his airplane into a rental car. *Id.* at 5-6. When the ICE agents eventually opened the suitcases later that evening they found 72 brick-shaped packages filled with heroin and cocaine. *Id.* Moreover, even though the agents had just witnessed Petitioner handle the baggage, he told the Fairfield officer that he had no knowledge of the luggage. Such a false exculpatory statement also provides, at a minimum, probable cause as to Petitioner's *mens rea*. Consequently, there is no indication that a preliminary hearing would have ultimately changed the outcome here. Petitioner has not established prejudice. As a result, Petitioner fails to establish that Mack's counsel was ineffective.[4]

### 2. Guilty Plea

Petitioner maintains that he only pled guilty because Adams represented that Petitioner was not waiving his right to appeal the denial of the suppression hearing by pleading guilty. Petitioner contends that he pled guilty with the understanding that he maintained the right to appeal the motion to suppress decision. Pet's Br. at 13.

"In a challenge to a guilty plea based on ineffective assistance of counsel, the prejudice inquiry takes the form of 'whether counsel's constitutionally ineffective performance affected the outcome *of the plea process.*'" *United States v. Kenley*, 440 F. App'x 78, 80 (3d Cir. 2011) (quoting *United States v. Orocio*, 645 F.3d 630, 643 (3d Cir. 2011). To demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Thus, rather than showing

---

[4] The Court also does not credit Plaintiff's claim that he could have evaluated the evidence at a preliminary hearing and, perhaps, decided to plead guilty earlier, thereby obtaining an additional one point reduction for acceptance of responsibility. Plaintiff had plenty of time, after the return of both the indictment and superseding indictment, to plead guilty and receive the additional point reduction. He did not do so.

13

that he would likely have been acquitted at trial, a petitioner need only show that he "could have rationally gone to trial in the first place." *Orocio*, 645 F.3d at 643.

In this instance, the alleged failure to inform Petitioner that he was waiving his right to appeal the suppression decision, could arguably amount to ineffective assistance of counsel at the plea stage. Although the Government contends that Adams appropriately advised Petitioner as to the consequences of his guilty plea, this is not conclusively reflected in the record. While Petitioner's guilty plea is unconditional, the transcript does not reflect any specific questions concerning Plaintiff's appellate rights vis-à-vis the motion to suppress decision. Although the Government argues that Petitioner would have likely been convicted by a jury at trial, this is not the standard applied by the Court. Without a hearing on this issue, the Court cannot conclude that Petitioner's decision to go to trial, despite the likelihood of a guilty verdict, was irrational. It is possible that this was a risk that Petitioner was willing to take in order to appeal the suppression decision. Petitioner clearly felt strongly about the admissibility of the evidence obtained through the initial search and likely believed[5] that he would have been successful with his motion on appeal.

Because the Court cannot conclusively determine that Petitioner is not entitled to relief as to this argument, the Court will hold an evidentiary hearing as to Petitioner's claim of ineffective counsel regarding the guilty plea. The hearing will be limited to Mr. Adams' advice to Petitioner as to the effect of a guilty plea on his right to appeal the motion to suppress determination.

### 3. Sentencing

---

[5] As discussed below, the Court does not find that the Third Circuit would have reversed Judge Debevoise's decision concerning the motion to suppress. However, the Court cannot conclude as a matter of law that it would have been irrational for Petitioner to insist on going to trial so that he could raise the suppression issue on appeal.

Petitioner argues that at the sentencing hearing, Adetula failed to cite and reference persuasive and controlling law that would have precluded application of the role enhancement under U.S.S.G. § 3B1.1(c). Petitioner continues that this failure foreclosed his opportunity to be considered for a decrease to the offense level through the "safety valve" reduction, as set forth in 18 U.S.C. § 3553(f). Pet's Br. at 6-9.

It is clear that the obligation to provide effective assistance includes a duty to make reasonable investigations of the law. Moreover, the failure to reference or cite relevant and favorable decisions from other courts may constitute deficient performance. *See United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007). But to show prejudice due to ineffective assistance of counsel at the sentencing phase, "a deficiency by counsel [must] result[] in a specific, demonstrable enhancement in sentencing." *Id.* at 337.

Here, Plaintiff cannot show prejudice even assuming, solely for purposes of argument, that Mr. Adetula's performance was deficient. As to the role enhancement, Petitioner's arguments fail because the application of Section 3B1.1 turned on a factual issue. Specifically, Judge Debevoise credited Ramirez Vasquez's deposition testimony, and explicitly rejected Petitioner's argument that she lied in her deposition. This factual determination led to Judge Debevoise's conclusion that Petitioner directed Ramirez Vasquez's actions.[6] Sent. Tr. at 34:21-25; 36:17-24. Consequently, Adetula's failure to cite to unnamed, precedential legal authority does not appear to have any bearing on the application of U.S.S.G. § 3B1.1. In addition, Judge Debevoise

---

[6] In applying the two-level enhancement under Section 3B1.1, Judge Debevoise also concluded that numerous, unnamed individuals must have also been involved in loading the plane in Arizona and for the expected delivery and receipt of the drugs in New Jersey. *See* Sent. Tr. at 36:8-17. Although Petitioner takes issue with this factual conclusion, it does not change the Court's analysis because organizing, leading, managing or supervising a single individual is enough for an two-level enhancement under Section 3B1.1(c). *See United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992).

15

permitted Petitioner himself to argue the issue, and Petitioner cited to numerous cases in support of his position. Sent. Tr. at 10-11:9-1.

For the same reason, Petitioner cannot demonstrate that the failure to cite additional case law impacted application of the safety valve reduction. To receive a downward departure through a safety valve reduction a court must find that, among other things, "the defendant was not an organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f)(4). As discussed, Judge Debevoise made a factual conclusion that Petitioner directed Ramirez Vasquez's activities. As a result, the safety valve reduction could not apply. Moreover, regardless of Petitioner's role, he unquestionably did not meet another requirement of the safety valve. To qualify for the safety valve reduction, a defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). In this instance, however, Judge Debevoise concluded that Petitioner did not truthfully provide all the information he had regarding this offense or other related offenses. Sent. Tr. at 38:3-23. Therefore, Petitioner would not have received the safety valve reduction due to his failure to satisfy this additional requirement.

In addition, the Government also sought a two-level increase under U.S.S.G. § 3B1.3 because Petitioner flew his own plane to transport drugs. U.S.S.G. § 3B1.3 provides that a two-level upward adjustment may be applied if a defendant used a special skill to commit the crime. "'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include *pilots*, lawyers, doctors, accountants, chemists, and demolition experts." *See* § 3B1.3 cmt. 4 (emphasis added). However, if there is a potential adjustment "based solely on the use of a special skill, it may not

be employed in addition to an adjustment under § 3B1.1." *See* § 3B1.3. Therefore, because Petitioner received a two level increase due to his managerial role under U.S.S.G. § 3B1.1, Judge Debevoise could not apply an additional two-level increase for Petitioner's skill as a pilot. However, it seems highly likely that even if Judge Debevoise had not applied the adjustment under U.S.S.G. § 3B1.1, Petitioner would have still received a two-level increase to his base level due to his special skill. Thus, the offense level would likely remained unchanged even if Judge Debevoise did not determine that Petitioner managed Ramirez Vasquez.

### 4. Failure to Raise Meritorious Claims on Appeal

Finally, Petitioner contends that Adetula's failure to raise the application of U.S.S.G. § 3B1.1 on appeal amounts to ineffective assistance of counsel. Pet's Br. at 4-5.

If ineffective counsel claims involve the failure to raise issues on appeal, "Strickland requires that the defendant[] demonstrate that [he was] prejudiced by counsel's failure to pursue this meritorious claim." *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000). Petitioner cannot meet that burden here. As discussed, Judge Debevoise's decision to apply a two-level upward adjustment under U.S.S.G. § 3B1.1 turned on a factual determination. Factual findings, such as this credibility determination, will only be reversed on appeal if they are clearly erroneous. *See, e.g., Giles v. Kearney*, 571 F.3d 318, 329 (3d Cir. 2009) (reviewing district court's account of the evidence under clear error standard). "A finding is clearly erroneous if, after reviewing all of the evidence, we are left with a firm conviction that a mistake has been made." *United States v. Belletiere*, 971 F.2d 961, 969 (3d Cir. 1992). Given that Judge Debevoise decided that Ramirez Vasquez's deposition testimony was credible instead of her grand jury testimony, it is highly unlikely that the Third Circuit would conclude that this determination amounted to clear error. As

a result, Petitioner cannot establish that he was prejudiced by Adetula's failure to raise this issue on appeal.

## IV. CONCLUSION

Because Petitioner fails to establish that his counsel was ineffective or that he was prejudiced by his counsel's conduct at the pre-indictment phase, during sentencing, or through appeal, these claims fail. The Court, however, cannot conclusively establish whether Petitioner's counsel was deficient when Petitioner decided to plead guilty or that Petitioner was prejudiced by his plea. The Court, therefore, will hold an evidentiary hearing as to this issue only and limited to Mr. Adams' advice concerning Petitioner's appellate rights vis-à-vis the motion to suppress decision following a guilty plea. An appropriate Order accompanies this Opinion.

Dated: August 2, 2017

John Michael Vazquez, U.S.D.J.